UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
JEREMIAH SULLIVAN, in his fiduciary capacity
as a Trustee for the POINTERS, CLEANERS &
CAULKERS WELFARE, PENSION & ANNUITY
FUNDS, and as President of the BRICKLAYERS
AND ALLIED CRAFTWORKERS LOCAL
UNION No. 1, B.A.C.I.U., AFL-CIO; TRUSTEES
OF THE BRICKLAYERS AND TROWEL
TRADES INTERNATIONAL PENSION FUND;
and the INTERNATIONAL MASONRY
INSTITUTE ,

        Plaintiffs,      **REPORT AND**
                    **RECOMMENDATION**
 -against-
                    10-CV-4175 (JG) (JMA)
REMY BUILDERS CORP., RICHARD MARTINEZ,
JOHN and/or JOE FIDICUARY, M.A. ANGELIADES,
INC., and FEDERAL INSURANCE COMPANY,

        Defendants.
-------------------------------------------------------------------X

A P P E A R A N C E S:

Carol G. Dell
Holm & O'Hara, LLP
3 West 35th Street, 9th Floor
New York, NY 10001-2204
  *Attorney for Plaintiffs*

Michael McDermott
Georgoulis & Associates PLLC
120 Wall Street, Suite 1803
New York, NY 10005
  *Attorney for M.A. Angeliades and Federal*
  *Insurance Company*


**AZRACK**, **United States Magistrate Judge:**

   On September 13, 2010, plaintiffs Jeremiah Sullivan, Trustees of the Bricklayers and

Trowel Trades International Pension Fund ("IPF), and the International Masonry Institute

("IMI") (collectively "plaintiffs") commenced this action against defendants Remy Builders Corp. ("Remy"), Richard Martinez ("Martinez"), M.A. Angeliades, Inc. ("MAA"), and Federal Insurance Company ("Federal") (collectively "defendants") pursuant to the Employee Retirement Income Security Act, 29 U.S.C. §§ 1001 *et seq.* ("ERISA"), the Labor Management Relations Act, 29 U.S.C. §§ 141 *et seq.* ("LMRA"), and New York State Finance Law § 137 to recover delinquent charges, interest, attorneys' fees, and costs.

Although plaintiffs properly served Remy and Martinez with copies of the summons and complaint on October 14, 2010, and October 20, 2010, respectively, see ECF Nos. 4, 5, Remy and Martinez failed to appear or otherwise defend against the action. Plaintiffs moved for an entry of default on January 11, 2011. ECF No. 8. On January 12, 2011, the Clerk of the Court noted the default. ECF No. 12. By Order dated January 21, 2011, the Honorable John Gleeson referred plaintiffs' motion for default judgment against Remy and Martinez to me for a report and recommendation as to liability and damages. On January 24, 2011, Federal and MAA moved for a motion to dismiss for lack of subject matter jurisdiction. ECF No. 15. Judge Gleeson subsequently referred this motion to me as well. ECF Order, dated January 25, 2011.

For the reasons set forth below, I respectfully recommend that the default judgment against Remy and Martinez be granted solely as to liability, but not as to damages at this time. Additionally, I recommend denying Federal and MAA's motion to dismiss and recommend asserting supplemental jurisdiction over the remaining state law claims.

## I. BACKGROUND

Plaintiff Jeremy Sullivan brings this action in his capacity as trustee of the Pointers, Cleaners, and Caulkers Welfare Pension and Annuity Funds ("PCC Funds") and President of the Bricklayers and Allied Craftworkers Local Union No. 1 ("Local 1"). Compl. ¶ 4. The PCC

Funds, IPF funds, and IMI funds (collectively the "Funds") are jointly administered multiemployer benefit trusts within the meaning of ERISA. Compl. ¶¶ 4–8. Local 1 and Remy negotiated a Collective Bargaining Agreement ("CBA") effective from July 1, 2004, through June 30, 2010,[1] which required Remy to remit weekly contributions and fringe benefits to the Funds based on contracted rates. Compl. ¶ 28; Sullivan Aff. Exs. A, B.

MAA served as the general contractor on a construction project ("Wagner Project") to replace roofs and to perform brick repair on the Wagner House buildings in Manhattan. Compl. ¶ 29; Pls.' Opp. to Defs.' Motion to Dismiss ("Pls.' Opp.") 2. Federal, as MAA's surety, issued a labor and payment bond ("Wagner Bond"), insuring MAA's obligation to pay "all persons who have performed labor, rendered services, or furnished materials and supplies . . ." on the Wagner Project. Compl. ¶¶ 41–43. The conditions of the Wagner Bond further required that MAA, or its subcontractors, pay the wages and compensation for labor performed under the workers' relevant employment contract. Compl. ¶ 44.

MAA subcontracted with Remy and its officer, Martinez, to hire members of Local 1 to perform work for MAA on the Wagner Project. Compl. ¶ 44; Pls.' Opp. 2. Under the terms of the Wagner Bond, MAA and Federal assumed joint and several liability for any of Remy's non-payment of contributions and dues. Compl. ¶ 50; Pls.' Opp. 3.

By letter dated November 19, 2009, plaintiffs notified Federal and MAA that Remy failed to make fringe benefit contributions totaling $789,740.08 for work performed under the Wagner Bond from May 2007 to the present date.[2] Compl. ¶ 48. After Remy and Martinez

---

[1] On July 9, 2008, Remy and Local 1 signed a Memorandum of Agreement that incorporated and extended the terms of the 2004 CBA from July 1, 2008 through June 30, 2010. Aff. of Carol G. Dell in Supp. of Pls.' Appl. for Default J. ("Dell Aff.") ¶ 10; Aff. of Jeremiah Sullivan in Supp. of Pls.' App. for Default J. against Defs. Remy and Martinez ("Sullivan Aff.") ¶ 8, Ex. C.

[2] Two audit reports reveal that Remy owes an aggregate of $802,258.71 in delinquent payments for the work performed by Remy employees on the Wagner Project. Dell Aff. ¶ 36. For the period April 1, 2007 through March

3

failed to make the requisite payments, plaintiffs commenced this case on September 13, 2011. ECF No. 1. In its answer, MAA crossclaimed against Remy, alleging that Remy is obligated to indemnify MAA for all sums that MAA may be obligated to pay plaintiffs. MAA's Answer ¶¶ 148–158, ECF No. 3.

## II. DISCUSSION

### A. Liability

Defendants' default amounts to an admission of liability, and all the well-pleaded allegations in plaintiffs' complaint pertaining to liability are deemed true. See Greyhound Exhibit Grp, Inc. v. E.L.U.L. Realty Corp., 973 F.2d 155, 158 (2d Cir. 1992) (internal citation omitted); Lyons P'ship, L.P. v. D & L Amusement & Entm't, Inc., 702 F. Supp. 2d 104, 109 (E.D.N.Y. 2010). Here, the complaint alleges that Remy entered into agreements with Local 1 that required Remy to make timely fringe benefit contributions to the Funds for the work performed by Remy employees. Remy and Martinez failed to make these contributions in a timely manner. Compl. ¶¶ 28–38. Thus, the complaint sufficiently establishes the elements of liability required to state a claim under ERISA.

### B. Remedies

Although the allegations of a complaint pertaining to liability are deemed admitted upon entry of a default judgment, allegations relating to damages are not. See Credit Lyonnais Sec. (USA), Inc. v. Alcantara, 183 F.3d 151, 155 (2d Cir. 1999). A court must conduct an inquiry to ascertain the amount of damages with reasonable certainty. Id. (citing Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp., 109 F.3d 105, 111 (2d Cir. 1997)). The Second Circuit has approved the holding of an inquest by affidavit, without a hearing, as long as the

---

2, 2009, Remy owes the PCC Funds $51,902.26, and for the period April 1, 2009 through October 9, 2009, Remy owes $750,256.44 in delinquent payments. Id. ¶¶ 36–42.

Court has "ensured that there was a basis for the damages specified in the default judgment." Transatlantic Marine, 109 F.3d at 111 (citation omitted).

Plaintiffs seek unpaid contributions, interest for untimely contributions, liquidated damages, attorneys' fees, and costs. In support of their request for relief, plaintiffs submitted copies of the CBA and the Memorandum of Agreement, documents delineating the applicable interest rates and administrative fees, payroll records and schedules, delinquency records, remittance reports, tabulations of interest calculations, audit examinations, and invoices describing the legal fees and costs incurred in prosecuting this suit. See generally Sullivan Aff. Exs. A-H; Dell Aff. Exs. I–S. Despite these submissions, I decline to proceed with a damages inquest at this point in time.

1. **Deferred Damage Inquest**

The calculation of damages against the two defaulting defendants Remy and Martinez is complicated by the presence of non-defaulting defendants MAA and Federal. "Where some, but not all, defendants have defaulted, courts consistently hold that it is appropriate 'to enter judgment solely as to liability and not as to the amount of damages to be assessed against the defaulting party, since a separate determination of damages would pose the prospect of inconsistent judgments.'" Gesauldi v. MMK Trucking, Inc., No. 09-CV-1484, 2010 WL 3619569, at *4 (E.D.N.Y. Aug. 25, 2010) (Townes, J.) (quoting Montcalm Publ'g Corp. v. Ryan, 807 F. Supp. 975, 978 (S.D.N.Y. 1992)); see also J&J Prod., Inc., v. Aries-Friends, Ltd., No. 06-CV-3336, 2007 WL 3197332, at *1 (E.D.N.Y. Oct. 26, 2007) (Vitaliano, J.).

Courts are particularly inclined to defer a damage inquest where a defaulting defendant and a non-defaulting defendant may be held jointly and severally liable for the same damages. See Harvey v. Home Savers Consulting Corp., No. 07-CV-2645, 2008 WL 724152, at *2

(E.D.N.Y. Mar. 17, 2008) (Gleeson, J.); Long Island Hous. Services v. Greenview Props, Inc., No. 07-CV-352, 2008 WL 150222, at *2 (E.D.N.Y. Jan. 11, 2008) ("When there are multiple defendants who may be jointly and severally liable for damages alleged by plaintiff, and some but less than all of those defendants default, the better practice is for the district court to stay its determination of damages against the defaulters until plaintiff's claim against the nondefaulters is resolved."); 3947 Austin Blvd. Assocs. v. M.K.D. Capital Corp., No. 04-CV-8496, 2006 WL 785272, at *2 (S.D.N.Y. Mar. 24, 2006) (finding the assessment of damages against defaulting defendants premature where some defendants are jointly and severally liable); Lite–Up Corp. v. Sony Music Entm't, Inc., No. 97-CV-1546, 1999 WL 436563, at *2 (S.D.N.Y. June 24, 1999) (same); Montcalm Publ'g Corp. v. Ryan, 807 F. Supp. 975, 978 (S.D.N.Y. 1992) (same); but see Int'l Gemmological Instit., Inc. v. Rafaeil, No.05-CV-2395, 2005 WL 3880222, at *3 (S.D.N.Y. Aug.17, 2005) (finding no reason to delay damages assessment despite concerns of inconsistency). The deferral of a damage award minimizes the risk of issuing inconsistent damages. Harvey, 2008 WL 724152, at *2.

Considering that, under the Wagner Bond, MAA and Federal are jointly and severally liable to pay fringe contributions to the Funds to the extent Remy fails to pay, it is appropriate to defer the damage inquest at this time. Indeed, discovery against the non-defaulting defendants may yield evidence beneficial to plaintiffs in calculating their damages against Remy.[3] See Viznai v. United Homes of New York, Inc., No. 07-CV-4173, 2009 WL 931178, at *1 (E.D.N.Y. Apr. 3, 2009) (Korman, J.) Accordingly, any damages inquest against the defaulting defendants should be stayed until the potential liability of the non-defaulting defendants is established.

---

[3] Without more information as to the exact terms of the Wagner Bond, the court cannot explicitly discern how the damages would be allocated.

Moreover, a deferred damages inquest is appropriate where a general contractor seeks indemnification from a subcontractor, and the subcontractor defaults. Lopez-Oviedo v. Marvin, No. 08-CV-1909, 2009 WL 2984172, at *1 (E.D.N.Y. Sept. 14, 2009). Such is the case here. MAA already asserted a cross-claim for indemnification against subcontractor Remy in their answer. While MAA's initial indemnification claim was premature, as they requested indemnification before any imposition of liability against them, see Charter Oak Fire Ins. Co. v. Bolding, No. 08-CV-2632, 2009 WL 3246116, at *4 (E.D.N.Y. Oct. 1, 2009) (Matsumoto, J.), the damages inquest nonetheless should be deferred.

Lastly, Federal Rule of Civil Procedure 54(b) provides that a court "may direct the entry of a final judgment as to one or more but fewer than all of the . . . parties only upon an express determination that there is no just reason for delay. . . ." Here, plaintiffs fail to establish that there is "no just reason to delay" the final damages inquest. See Harvey, 2008 WL 724152, at *2. Therefore, I recommend that the Court refrain from calculating damages at this time, and defer the determination of damages as to Remy and Martinez until the underlying action against the two non-defaulting defendants is resolved.

**C. Supplemental Jurisdiction**

In light of the default judgment against Remy and Martinez, the only remaining claims are those asserted under New York State law. MAA and Federal request that the Court dismiss these claims for lack of subject matter jurisdiction. Defs.' Letter for Mot. to Dismiss ("Defs.' Letter"), ECF No. 18.

District courts "have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy." See 28 U.S.C. § 1367; see also Cement and Concrete Workers Dist. Council

Welfare Fund, Pension Fund, Legal Services Fund and Annuity Fund v. Frascone, et al., 68 F. Supp. 2d 166, 175 (E.D.N.Y. 1999) (Glasser, J.) (citing Mizuna Ltd. v. Crossland Fed. Sav. Bank, 90 F.3d 650, 657 (2d Cir. 1996)).

In United States v. Suffolk Construction, the district court entertained a similar question regarding the exercise of supplemental jurisdiction. No. 95-CV-9363, 1996 WL 391875, at *4 (S.D.N.Y. Jul. 12, 1996). The facts in Suffolk are strikingly similar to the facts in this case. There, plaintiffs were union workers who were hired by their ERISA employers, Eagle and Union Construction Company, to perform work on a construction project. Id. at *1. Eagle and Union Construction had subcontracted with a general contractor, Suffolk, to provide workers on the project. Id. Suffolk, in turn, financed surety bonds issued by Seaboard to guarantee performance and payment to the union workers. Id. When plaintiffs failed to receive payment for their work, they sued Eagle and Union Construction for breach of contract and violations of ERISA and LMRA, and asserted state claims against Suffolk and Seaboard. Id. Suffolk and Seaboard requested that the court decline the exercise of supplemental jurisdiction over the state law claims. Id. The district court denied the defendants' request, finding that both the federal and state claims derived from the same nucleus of fact stemming from the construction project, and the alleged failure of Suffolk's subcontractors to pay benefits to the workers.

The same reasoning applies to exercise supplemental jurisdiction here. Original jurisdiction is conferred by plaintiffs' ERISA and LMRA claims against Remy and Martinez, both of which present federal questions. See Mason Tenders District Counsel Welfare Fund v. Rubino, et al., No. 99-CV-3294, 2002 WL 31834460, at *2 (S.D.N.Y. Dec. 16, 2002). Although plaintiffs' claims against MAA and Federal do not have footing in ERISA, the state law claims are inextricably related to the federal question raised in plaintiffs' cause of action against Remy

8

and Martinez. Both the federal and state claims derive from a common nucleus of operative fact, stemming from the Wagner Project and the alleged failure of MAA's subcontractor to pay wages and benefits to the plaintiffs. No material difference of fact distinguishes the federal claims against the state law claims, and thus, the state law claims and the cross-claims against Remy and Martinez fall within the same case or controversy.

Further, because the claims against Federal are contract claims arising under a surety bond wherein the Funds are a clear third-party beneficiary, the Court may exercise supplemental jurisdiction over the state law contract claims. See Rubino, 2002 WL 31834460, at *2 (exercising supplemental jurisdiction over a contract claim arising from a surety bond where the funds are a third-party beneficiary and where the court has original subject matter jurisdiction pursuant to ERISA).

The court also has discretion under § 1367 to decline to exercise supplemental jurisdiction over state law claims if one of four conditions are met: (1) the claim raises novel or complex issues of state law; (2) the claim substantially predominates over the claims within the court's original jurisdiction; (3) the claim within the court's originally jurisdiction was dismissed; or (4) there are, in exceptional circumstances, other compelling reasons for the court to decline jurisdiction. 28 U.S.C. §1367(c); see also Drake v. Lab. Corp. of Am. Holdings, 323 F. Supp. 2d 449, 452–53 (E.D.N.Y. 2004) (citing Valencia v. Lee, 316 F.3d 299, 306 (2d Cir. 2003)).

None of these elements are met here. First, there are no novel or complex issues of state law in this case. Federal courts frequently resolve issues under New York State Finance Law § 137, particularly when the claim is accompanied by a federal ERISA claim. See e.g., Frascone, 68 F. Supp. 2d at 170 (exercising supplemental jurisdiction over a state claim against a

contractor and surety where the ERISA employer had defaulted). Second, the state law claim does not substantially predominate over the federal claims against Remy and Martinez. In Cement & Concrete Works Dist. Council Welfare Fund v. Consol. Builders Corp., the district court exercised supplemental jurisdiction over state law claims against a general contractor and a surety, despite the fact that the defendants in the ERISA federal claim had defaulted. No. 94-CV-5968, 1996 WL 497066, at *2 (S.D.N.Y. Dec. 4, 1996). The court held that, despite the default, the state law did "not predominate" in the action and that, "dividing plaintiffs' claims between federal and state fora would not promote economy or any other judicial purpose." Id.; see also Suffolk, 1996 WL 391875, at *5 (finding that the state law contract claims against a contractor and the contractor's surety "can hardly be described as more complex or more salient than the ERISA and LMRA claims"). Third, while a district court may decline supplemental jurisdiction where all federal claims are dismissed, the ERISA claim as a whole has not yet been dismissed here. Indeed, I recommend that the damage inquest as to the federal claim be deferred pending resolution of the state law claim. Fourth, MAA and Federal have not provided any compelling reasons for the court to decline jurisdiction.

Finally, I find that the exercise of supplemental jurisdiction over the state law claims serves the interests of judicial economy and justice. See 28 U.S.C. § 1367(c)(3) (specifying that the court should weigh "the values of judicial economy, convenience, fairness, and comity" when determining whether to exercise supplemental jurisdiction"). Because I recommend deferring the determination of damages as to the federal ERISA claim pending the resolution of the underlying state claims against MAA and Federal, it logically follows that the Court should retain jurisdiction over the state claims. Adjudicating this matter in the Eastern District of New York will not inconvenience the parties, and dividing the state law claim and the federal damage

inquest between two courts would waste valuable judicial resources. See Suffolk, 1996 WL 391875, at *5.

### III.     CONCLUSION

For the reasons set forth above, I respectfully recommend entering default judgment as to liability against defendants Remy and Martinez and deferring the calculation of damages against these defendants until the resolution of the claims against non-defaulting defendants MAA and Federal. Additionally, I recommend denying Federal and MAA's motion to dismiss, and recommend asserting subject matter jurisdiction over the remaining state law claims.

Plaintiffs are hereby ordered to serve a copy of this report and recommendation on Remy and Martinez and to promptly file proof of service by ECF. Any objections to this report and recommendation must be filed with the Clerk of the Court, with a copy to the undersigned, within fourteen (14) days of the date of service of this report and recommendation. Failure to file objections within the specified time waives the right to appeal the District Court's order. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 72.

SO ORDERED.

Dated: June 17, 2011
Brooklyn, New York                                   /s/
                                                     JOAN M. AZRACK
                                                     UNITED STATES MAGISTRATE JUDGE